**RUMPKE WASTE, INC., et al., Plaintiffs,**

v.

**Walter HENDERSON, et al., Defendants.**

**No. C–1–83–1123.**

United States District Court, S.D. Ohio, W.D.

July 30, 1984.

William A. Posey, and Louis F. Gilligan, Cincinnati, Ohio, for plaintiffs.

Dexter Bastin, and Andrew Dennison, Batavia, Ohio, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPIEGEL, District Judge:

This case arises out of a zoning resolution adopted by the Pike Township Board of Trustees in May 1983. Plaintiffs claim that this resolution deprives them of their property rights without due process of law in violation of the Fourteenth Amendment to the Federal Constitution. They assert first that it was the intent of the Trustees and of the Pike Township Zoning Commissioners in adopting the resolution to exclude totally sanitary landfills. Secondly, they argue that the resolution is unconstitutionally vague. Third, they maintain that the resolution has no substantial relevance to the public health, safety, morals, or welfare of the citizens of Pike Township. They maintain further that the resolution is not a comprehensive zoning plan as required by Ohio Rev.Code § 519.02. Finally, they insist that the members of the Zoning Commission charged with developing the resolution failed to make use of information and assistance available from

public officials, departments, and agencies as required by Ohio Rev.Code § 519.05.

### I.

Plaintiffs John and Ruth Ellen Railsback own a tract of land of approximately six hundred and fifty-two acres in Pike Township, Brown County, Ohio (Railsback property). In June 1982 plaintiff Rumpke Waste, Inc. (Rumpke) entered into a contract to purchase this property for use as a sanitary landfill subject to certain conditions, including final approval from the Ohio Environmental Protection Agency (OEPA) to use the Railsback property as a sanitary landfill. The contract is also conditioned upon the absence of zoning restrictions that would prohibit the installation and operation of such a landfill on the Railsback property. At the time the Railsbacks and Rumpke entered into this contract, there was no zoning in Pike Township.

On May 14, 1983 the Pike Township Board of Trustees adopted a zoning resolution proposed by the Zoning Commission for the unincorporated area of Pike Township including the Railsback property. The Trustees also authorized a special election to be held August 2, 1983, at which time the resolution would be presented to the voters pursuant to statutory requirements.

On July 29, 1983 plaintiffs filed a complaint and motion for a temporary restraining order, asking this Court to enjoin the election from proceeding. Following a hearing, the Court entered an agreed-upon order on August 3, 1983 allowing the election to proceed but restraining certification of the election results. This order had the effect of maintaining the status quo pending trial and decision on the merits. The resolution was passed by a majority of the voters in the special election.

The question before us is whether the Pike Township zoning resolution, as written, denies plaintiffs property rights without due process of law in violation of the Fourteenth Amendment.[1] A zoning

---

1. Plaintiffs alleged in the original and amended complaints and in their motion for a TRO that

resolution does not violate the due process clause if it is reasonable and substantially related to public health, safety, morals or general welfare. *Euclid v. Ambler Realty,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). Zoning ordinances are accorded a presumption of constitutionality if the validity of the zoning classification is fairly debatable. *Id.* at 388, 47 S.Ct. at 118. This presumption flows out the recognition that the local legislative body is more familiar with local conditions and thus in a better position than the courts to determine the nature and scope of necessary regulation. *Hudson v. Albrecht, Inc.,* 9 Ohio St.3d 69, 71–72, 458 N.E.2d 852 (1984). *See also Lakewood, Ohio Congregation of Jehovah's Witness v. City of Lakewood,* 699 F.2d 303, 308 (6th Cir.1983).

## II.

In adopting the resolution at issue here, the Pike Township Board of Trustees followed the statutory procedures governing the adoption of zoning by an Ohio township and set forth at Ohio Rev.Code §§ 519.01 *et seq.* Section 519.02 states:

> [T]he board of township trustees may in accordance with a comprehensive plan regulate by resolution ... the uses of land for trade, industry, residence, recreation or other purposes in the unincorporated territory of such township.

"Comprehensive plan" is not defined in this or any other subsection of the chapter governing township zoning. Before the board of trustees can act, however, it must pass a resolution, either *sua sponte* or upon receipt of a petition signed by the requisite number of qualified voters, stating its intention to proceed with zoning. Ohio Rev. Code § 519.03. The trustees then establish a zoning commission charged with submitting a plan, including text and map, representing its recommendations to the trustees. Ohio Rev.Code §§ 519.04, 519.05. The statute states:

> the ballot to be presented to the voters at the special election on August 2, 1983 failed to describe accurately the proposed zoning resolu-

> The zoning commission shall make use of such information and counsel as is available from appropriate public officials, departments, and agencies, ....

Ohio Rev.Code § 519.05. The zoning commission must also hold at least one public meeting, notice of which must be given in a newspaper of general circulation not less than thirty days before the hearing before certifying its recommendation to the trustees. Ohio Rev.Code § 519.06.

After receiving the certified plan from the zoning commission, the trustees must hold a public hearing on the resolution at least thirty days after giving notice of the time and place of the hearing. Ohio Rev. Code § 519.08. If changes are proposed, these changes must be submitted to the zoning commission for comment. After the zoning commission makes its recommendations regarding the proposed changes to the trustees, the trustees must hold a second public hearing following appropriate notice. Ohio Rev.Code § 519.09. Following this public meeting the trustees vote upon adoption of the zoning resolution. If the trustees adopt the plan, the plan is then submitted to the voters for approval or disapproval. If the zoning resolution is approved by a majority of the vote cast, it becomes effective upon certification by the board of elections. Ohio Rev. Code §§ 519.10, 519.11.

The parties agree that the Pike Township Board of Trustees and Zoning Commission complied with the statutory procedures just outlined with two exceptions. Plaintiffs challenge whether the zoning resolution is a comprehensive plan as required by Ohio Rev.Code § 519.02, as well as whether the Zoning Commission complied with the directive of Ohio Rev.Code § 519.05 to make use of available information and counsel. These challenges will be examined later. Before proceeding to plaintiffs' arguments, however, it is appropriate to look at the procedures by which a zoning resolution, once adopted, can be modified.

> tion. No evidence was presented on this issue. Accordingly, we decline to make any findings with respect to the adequacy of the ballot.

A zoning resolution may be modified by amendment. The amendment process, which is also governed by statute, may be initiated by, among others, an owner of property within the area subject to the amendment by filing an application with the trustees. After an application for amendment has been filed, the zoning commission must set a date for a public hearing on the proposal and give appropriate notice. Following the hearing, the zoning commission submits its recommendation regarding the amendment to the township trustees who set a date for another public hearing and give appropriate notice. Following this hearing, the trustees may either adopt, deny or modify the zoning commission's recommendation. The amendment as adopted by the trustees becomes effective in thirty days unless a petition signed by a specified number of voters and asking that the amendment be put before the voters at the next primary or general election is presented to the trustees. Unless the amendment receives a majority of the vote cast in the referendum, it does not become effective. Ohio Rev.Code § 519.12.

The trustees of any township with zoning regulations must appoint a board of zoning appeals. Ohio Rev.Code § 519.13. Among the board's power is the authority to grant conditional zoning certificates for the use of land if the zoning resolution provides for such certificates for specific uses. Ohio Rev.Code § 519.14(C). In other words, a person seeking to use land in a particular fashion may apply to the board of zoning appeals for a conditional use permit, but only if the zoning resolution specifies that the proposed use is permitted in that district or zone pursuant to a conditional use permit. A party adversely affected by a decision of the board of zoning appeals has the right of appeal to the Court of Common Pleas. Ohio Rev.Code § 2506.01.

The amendment procedure is a legislative one. *Tuber v. Perkins*, 6 Ohio St.2d 155, 216 N.E.2d 877 (1966). A person wishing to have certain property rezoned would follow the amendment procedure. The procedure for applying for a conditional use permit is administrative. Furthermore, it is unavailable unless the zoning resolution allows for the proposed use pursuant to a conditional use permit.

■ Finally, a declaratory judgment action is available to determine the constitutionality of a zoning ordinance as it applies to a specific piece of property. However, failure to exhaust administrative remedies is an affirmative defense unless there is no administrative remedy available that could provide the relief sought or the administrative remedy is unnecessarily onerous. *Driscoll v. Austintown Associates*, 42 Ohio St.2d 263, 273–75, 328 N.E.2d 395 (1975).

### III.

The record contains two zoning resolutions. The parties have stipulated that plaintiffs' exhibit 1 is a true and accurate copy of a draft of the first zoning resolution prepared and considered by the Zoning Commission. That resolution establishes one zoning district and enumerates twenty-eight uses permitted throughout the district. Explosive manufacturing plans and sanitary landfills are absolutely prohibited throughout the district.

The stipulated testimony of Commissioner Steed indicates that the commissioners and trustees were advised in February 1983 by counsel that this resolution would not withstand judicial scrutiny (doc. 18 at 11; *see also*, doc. 8, tr. of motion for TRO, July 30, 1983 at 42). That resolution was abandoned.

The Zoning Commission then hired Steven Wharton to assist in preparing another resolution that would comply with statutory and constitutional requirements. The parties have stipulated that plaintiffs' exhibit 2 is a true and accurate copy of the zoning resolution adopted by the Zoning Commission and Board of Trustees and voted upon in the August 1983 special election. It is this resolution which is at issue.

The adopted zoning resolution divides the unincorporated territory of Pike Township into four districts or zones: agricultural

(A), residence (R), commercial (B), and industrial (I). The boundaries of the districts are marked on the district map which is a part of the resolution. The Railsback property is zoned agricultural.

The resolution states that a use specifically not provided for within the resolution is assumed prohibited unless stated otherwise by the board of zoning appeals. Article IV, Section 4. Restrictions on uses of land zoned agricultural appear in Article V, Section 1. Section C, labeled "Uses Prohibited," expressly prohibits:

> [a]ll establishments or activities operated publicly or privately for the disposal or storage of garbage, rubbish, offal or other waste or surplus material not originating upon the premises.

The parties agree that a sanitary landfill is a prohibited use in an agricultural district. In other words, under the resolution as written, the Railsback property could not be used for a sanitary landfill.

Section 4 of Article V governs uses in an industrial district. Subsection B enumerates six permitted uses requiring a conditional use permit. These include airports and heliports, heavy manufacturing facilities, and junkyards with certain restrictions. Also permitted, assuming the board of zoning appeals would issue a conditional use permit, are:

> 4. Any use or activity that requires unenclosed structures or the storage of bulk materials, equipment, or raw materials, components of finished products or products outside of unenclosed buildings.
> 5. Any use or activity involving a dangerous, toxic, hazardous or explosive material, or non-fuel liquid in the manufacture or process activity or as a finished component, product or by-product.
> 6. Any other industrial or manufacturing use as determined by the Board of Zoning Appeals to be of a similar character as the above permitted uses and will not emit noise, dust, vibration, heat, odor, or other negative effects beyond the limits of its lot.

Article V, Section 4B, 4–6. Any use or activity not specifically provided for in the section governing industrial districts are prohibited. Article V, Section 4C.

Plaintiffs assert that the zoning resolution as adopted by the Zoning Commission, Board of Township Trustees and voters is constitutionally defective in that it deprives them of their property rights without due process of law. They put forth five grounds for this conclusion.

First, they assert that not only was it the intent of the trustees and commissioners to develop a resolution that would absolutely bar sanitary landfills but the commissioners and trustees so interpret the resolution adopted. Second, the resolution is allegedly so vague that a person of ordinary intelligence would not have fair notice that his conduct is forbidden. Plaintiffs contend further that the resolution is not substantially related to public health, safety, or welfare and thus is arbitrary and capricious. Next, they argue that the zoning resolution is not a comprehensive plan as required by Ohio Rev.Code § 519.02. Finally, plaintiffs maintain that in developing the resolution, the zoning commissioners failed to consult with appropriate public officials as required by Ohio Rev.Code § 519.05.

We shall consider each of these contentions in turn. Before doing so, however, we reiterate that for purposes of determining whether this resolution is constitutional as written, the standard we must apply to each of plaintiffs' arguments is whether plaintiffs have demonstrated that the resolution has no substantial relationship to public health, safety or welfare. *Ambler Realty,* 272 U.S. at 395, 47 S.Ct. at 121. All doubts must be resolved in favor of validity. *Id.* at 388, 47 S.Ct. at 118.

## IV.

The stipulated testimony of the trustees and commissioners demonstrates that their intent in adopting the resolution was to block Rumpke from installing a sanitary landfill on the Railsback property. For example, trustee Henderson testified that the Rumpke proposal to install a sanitary

landfill in Pike Township was the impetus for the zoning attempts (doc. 18 at 9). Commissioner Steed's testimony is to the same effect (doc. 18 at 10). Commissioner Steed also testified that the resolution at issue here was prepared because the commissioners and trustees believed that the initial resolution (plaintiffs' exh. 1) would not withstand judicial scrutiny (doc. 18 at 11). He testified further that the resolution that was adopted was intended to exclude sanitary landfills completely from Pike Township (doc. 18 at 12–13).

There is no testimony suggesting that the trustees and commissioners did not intend to block the Rumpke project and any other sanitary landfill. In fact, defendants do not challenge plaintiffs' assertion that the zoning process was so intended. *See* doc. 8, tr. of TRO hearing, at 39–40. The initial, and rejected, resolution (plaintiffs' exh. 1) is further evidence that the trustees and commissioners intended to block the Rumpke project. Accordingly, we find as a matter of fact that defendants did intend to block the Rumpke project by enacting the zoning resolution.

■ Plaintiffs argue that a court must ascertain and give full effect to the intention of the zoning commissioners and board of township trustees. We do not dispute this proposition. Nevertheless, we cannot conclude that an intent to bar a particular use absolutely is per se unreasonable so as to render the resolution constitutionally invalid. Plaintiffs have not cited nor have we found such a case. The test for the constitutionality of a zoning resolution is not what the enactors intended but whether the enactment bears a reasonable and substantial relationship to public health, safety or general welfare.

The stipulated testimony of the trustees and commissioners also establishes that they believed that the resolution as adopted absolutely bars sanitary landfills from Pike Township. Steven Wharton, who was hired by the Zoning Commission to assist in developing a zoning proposal, testified to

the contrary. His testimony will be discussed at greater length later. In brief he testified that a sanitary landfill could be installed in an industrial district pursuant to a conditional use permit. Our own reading of the resolution persuades us that Mr. Wharton's interpretation is the correct one.

■ However, even if we accepted plaintiffs' view that the resolution absolutely bars sanitary landfills from all of Pike Township, we could not conclude that such a bar automatically renders the resolution constitutionally defective. Again, plaintiffs have not provided us with, nor have we located, any authority holding unconstitutional a zoning provision that absolutely prohibits a particular use. The inquiry instead must focus on whether the challenged restriction is substantially related to public health, welfare or safety.

■ Furthermore, the challenge is to the resolution as adopted, not to the resolution as applied. Mr. Wharton testified that the resolution allows for the installation of a sanitary landfill in an industrial district pursuant to a conditional use permit, relying on Article V, Section 4(B)(4) and (6). He pointed out that Article IX of the resolution permits plaintiffs to petition for a zoning amendment to have the property rezoned from agricultural to industrial.[2] He stated further that if plaintiffs succeed in having the Railsback property rezoned, they may petition the board of zoning appeals for a conditional use permit. Mr. Wharton pointed out that if they are denied such a permit, they have the right to appeal that decision to the Court of Common Pleas pursuant to Ohio Rev.Code § 2506.01. We concur with Mr. Wharton's reading of the resolution, and conclude that the resolution as written does not act as an absolute bar to the installation of a sanitary landfill in Pike Township.

■ We cannot say that plaintiffs will be unsuccessful in attempting to have the Railsback property rezoned from agricul-

---

**2.** The amendment process is mandated by statute. Ohio Rev.Code § 519.12. Plaintiffs do not allege that the procedure set forth in Article IX does not comply with § 519.12.

tural to industrial so that they might apply for a conditional use permit. Obviously this procedure will require considerably more time and expense than a declaration by us that the resolution is unconstitutional. That fact, however, does not justify a finding that the resolution as written is unconstitutional.

V.

Plaintiffs next contend that the zoning resolution is so vague and indefinite that a person of ordinary intelligence could not ascertain its meaning. In particular, they refer to the language of Article V, Section 4(B)(4). Subsection B permits certain uses in an industrial district if the board of zoning appeals issues a conditional use permit. Subsection 4 allows the issuance of a conditional use permit for

> Any use or activity that requires unenclosed structures or the storage of bulk materials, equipment, or raw materials, components of finished products or products outside of unenclosed buildings.

According to plaintiffs, it is impossible to tell whether this language permits the issuance of a conditional use permit for a sanitary landfill.

Mr. Wharton testified that the resolution permits the installation of a sanitary landfill in an industrial district pursuant to a conditional use permit, pursuant to either the subsection just quoted or 4(B)(6) which permits the board of zoning appeals to issue a conditional use permit for "any other industrial … use … determined … to be of a similar character." The stipulated testimony of the zoning commissioners and trustees indicates that they interpret the resolution as excluding sanitary landfills absolutely from all of Pike Township.

 As traditionally utilized, the unconstitutionally vague argument provides that a statute criminalizing certain conduct will be struck down if its language is so vague that it does not put a person of ordinary intelligence on fair notice that his proposed conduct is forbidden. *See, e.g., Papachristou v. City of Jacksonville,* 405 U.S. 156,

162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1971).

The argument has been used in at least one zoning case, although the court found the argument without merit as applied to the language of the challenged ordinances. *Stansberry v. Holmes,* 613 F.2d 1285, 1288–90 (5th Cir.), *cert. denied,* 499 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980). In that case plaintiffs challenged the constitutionality of zoning regulations that limited the location or operation of sexually oriented commercial enterprises. The regulations also made it unlawful to operate such a business without securing a valid permit. The court stated that a regulation need not be cast in mathematically precise terms so long as it gives fair warning of the conduct proscribed in light of common understanding and practices. 613 F.2d at 1289, citing *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1971). The court examined the regulations, in particular the challenged definitions, as a whole and concluded that they were not constitutionally defective.

 We find plaintiffs' vagueness argument without merit. That Mr. Wharton on the one hand and the trustees and commissioners on the other disagree about the interpretation of the resolution does not render it impermissibly vague. The commissioners and trustees no doubt read into the resolution what they wish to see there. Mr. Wharton, however, has had experience in drafting other resolutions and is more familiar with the usual interpretations given to zoning resolutions.

 In addition, zoning resolutions, by their very nature, put persons on notice that there are restrictions on the uses to which land can be put. This resolution states at Article IV, Section 4 that "[a]ny use specifically not provided for … shall be assumed to be prohibited, unless stated otherwise by the Board of Zoning Appeals." We cannot conceive of language that more precisely puts persons on notice as to their obligation to inquire before put-

ting their land to a use not expressly referred to in the resolution.

Furthermore, our own reading of the resolution persuades us that a person of ordinary intelligence might well interpret the resolution as permitting a sanitary landfill in an industrial district pursuant to a conditional use permit under either 4(B)(4) or 4(B)(6). Nevertheless, and more important for purposes of the unconstitutionally vague argument, such a person would know that installing a sanitary landfill is proscribed by the regulation unless the board of zoning appeals determines that a conditional use permit should issue.

■ We conclude that the zoning resolution does put persons of ordinary intelligence on fair notice that certain conduct is proscribed. We find, therefore, that the resolution is not constitutionally defective as a result of vagueness.

## VI.

Plaintiffs' third argument is that the zoning resolution is arbitrary and unreasonable in that it has no substantial relation to the public health, safety, morals or general welfare. There are several facets to this argument. First, plaintiffs assert that an absolute exclusion of sanitary landfills from Pike Township is arbitrary and capricious given the strict regulation of such landfills by OEPA. Secondly, they contend that the zoning commissioners failure to consider the effect of a sanitary landfill on the public welfare renders the resolution arbitrary and capricious. Next, they assert that the resolution must be found arbitrary because its adverse impact upon the value of the Railsback property far outweighs any benefits to the public.

A. We have already rejected the argument that the resolution absolutely excludes sanitary landfills from Pike Township. The stipulated testimony of the township trustees and commissioners clearly indicates that they not only intended the resolution to exclude landfills absolutely

but so interpret the resolution (*see* doc. 18). John Pflum, general and managing partner in the consulting, engineering and planning firm of Pflum, Klausmeier and Wagner, also testified that in his opinion the resolution was designed to absolutely exclude sanitary landfills. Mr. Wharton's testimony, however, was to the contrary as already noted. Our own reading of the resolution persuades us that sanitary landfills would be permitted in industrial districts pursuant to a conditional use permit. Moreover, and assuming that the land proposed for a sanitary landfill was appropriate for such a use, we cannot conclude that a court of common pleas would not find it arbitrary and capricious for the board of zoning appeals to deny a conditional use permit. Accordingly, we conclude that the zoning resolution does not absolutely prohibit sanitary landfills from all of Pike Township. Accordingly, we decline to find the resolution arbitrary and capricious on this ground.

■ B. The plaintiffs next argue that the zoning commissioners and trustees failed to consider the effect of a sanitary landfill on the health, safety or general welfare of its citizens. Their stipulated testimony certainly so indicates. However, the Zoning Commission hired Mr. Wharton[3] on the advice of counsel to assist in preparing the resolution. His testimony clearly establishes his own understanding that zoning is permissible only if it is for the purpose of promoting public, health, morals, or safety. It is true that Mr. Wharton testified that he did not consider the effect of a sanitary landfill on the health, safety or general welfare of the citizens of Pike Township. That fact alone does not render the resolution arbitrary, for there is no requirement that the effect of every conceivable land use be determined prior to adopting a zoning plan.

■ The power to zone is critical to a community's ability to maintain an acceptable quality of life. The Supreme Court has never struck a zoning resolution on the

**3.** Following voir dire by defendants as to his qualifications, the Court found Mr. Wharton qualified as an expert on comprehensive zoning plans.

grounds that it exceeded the legislature's police power except in those cases in which zoning impinged on a constitutionally protected right. *See, e.g., Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). To the contrary, it has stated that land use regulations may promote spiritual and aesthetic as well as physical and monetary values. *Berman v. Parker,* 348 U.S. 26, 32, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954). A community may adopt zoning to create and promote residential areas to promote family values. *Village of Belle Terre v. Boraás,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974). The test is always whether the regulation bears a substantial relationship to the public health, safety or general welfare.

The plaintiffs presented considerable evidence demonstrating that the Rumpke proposal complied with all federal and state requirements. Dale Flaharty, the civil engineer in charge of the Rumpke project, testified that the operation would not be visible to neighbors, would permit adequate run-off of surface water, and would not involve the storage of any material outside of unenclosed structures or buildings. He also testified that a landfill installed and operated pursuant to OEPA regulations would not cause pollutants, dust, obnoxious odors, or increased noise in surrounding areas. Mr. Flaharty's opinion was that the Rumpke landfill would not have any adverse effect upon public health, safety or welfare. Mr. Pflum, an expert in land use planning, also testified that a landfill operating in accordance with OEPA regulations would not adversely affect public health, safety or general welfare.

Defendants, on the other hand, presented Pike Levine, who was qualified as an expert on land appraisals. Mr. Levine testified that a sanitary landfill has an adverse impact on the economic value of surrounding land. He explained that the decline in value was the result of concerns about increased pollution, noise, odors, and other deleterious effects of a sanitary landfill. Mr. Levine acknowledged that the fears might be imaginary, but testified that

those fears, even if imaginary, clearly lead to declining property values.

Mr. Wharton testified that at the time he was hired he was aware that solid waste management was a county-wide concern and further that he was aware that there was a proposal to install a sanitary landfill in Pike Township. He testified further that he was unaware of the status of this proposal, made no effort to notify the owners of the land that the zoning process had begun and made no effort to ascertain whether a sanitary landfill would have any detrimental effect on the public. However, he also testified that the meetings of the zoning commissioners were open to the public and appropriate statutory notice was given. Plaintiffs do not challenge this assertion. There is no statutory requirement that a zoning commission give notice to land owners that a board of township trustees has resolved to begin the zoning process.

 It is true that the Ohio legislature specifically authorizes sanitary landfills and that such land uses are strictly regulated by the Ohio EPA. Nonetheless, that Ohio permits landfills does not mean that a particular smaller governmental entity must permit landfills. The Ohio legislature has expressly authorized townships to adopt any zoning resolutions so long as they are pursuant to a comprehensive plan and for the purpose of promoting public health, safety and morals. Ohio Rev.Code § 519.02. It is for the zoning body itself to make the determinations as to the most appropriate land uses.

Moreover, even if the commissioners and trustees intended to exclude landfills from Pike Township, they did so based upon their view of the effect of such a project on their land and lives. The Court notes that there was much testimony about traffic patterns, noise, dust, pollution, possible odors and the aesthetic aspects of a landfill. It is undisputed that the zoning commissioners did not seek information from Rumpke or the Railsbacks as to the precise effects of their proposed project. It is also

true that the commissioners and trustees testified that they wished to keep sanitary landfills out of Pike Township. That desire, however, must have been based on their common experience and their general knowledge of the world. They made a decision based on that knowledge as to what was best for their community.

■ It is true that the initial resolution they drafted is flawed in that it has the single purpose of excluding sanitary landfills. However, that is not the resolution that is before us. The resolution that is before us is a more comprehensive document based upon the present uses of the land and the desire to formulate a flexible plan for future development as Mr. Wharton testified. In developing such a plan, the commissioners and trustees could properly conclude that a sanitary landfill might have adverse effects on the life of their community and on the value of their property. Indeed, the testimony demonstrates that a sanitary landfill does have some adverse effects, although admittedly they may be far more minimal than anticipated by defendants. Further, we find credible Mr. Levine's testimony that sanitary landfills have an adverse effect on the economic value of surrounding property. Accordingly, we conclude that the resolution as adopted is not arbitrary and capricious because it does bear a substantial relationship to the public health, safety or general welfare of the citizens of Pike Township.

C. Plaintiffs next assert that even if the resolution has some relationship to the public health, safety or general welfare, that relationship is far outweighed by its adverse impact upon the value of the Railsback property. Mr. Railsback testified that he has been attempting to sell the property for at least ten years, but has not had a definite offer, other than the Rumpke offer, for the total acreage during that time. Mr. Levine, defendants' expert witness on the value of the property, testified that the highest and best use of the Rumpke property was as rural residential around the perimeter and agricultural in the center. However, he also testified that he had iden-

tified no recent sales of comparable pieces of property in Brown County. Plaintiffs contend that there is no reasonably foreseeable purchaser of the property if the property is restricted to agricultural and residential use. Plaintiffs conclude that the zoning resolution precludes the Railsbacks from selling the property, decreases the value of their property, and deprives plaintiffs of the free use of the property. This effect, in plaintiffs' view, far outweighs whatever minimal benefits to public health, safety or welfare the resolution might have. The Court disagrees.

■ The facts of the instant case are distinguishable from those in *East Fairfield Coal Co. v. Booth*, 166 Ohio St. 379, 143 N.E.2d 309 (1957), relied upon by plaintiffs. In that case, the Ohio Supreme Court found a township ordinance prohibiting strip mining arbitrary and unreasonable. The regulated land was rundown farm land on the edge of the township, approximately two miles from built-up areas and about three hundred yards from a presently operating strip mine. The value of the property regulated was approximately $17,000 while the value of the subsurface minerals was approximately $1 million. *Id.* at 380–83, 143 N.E.2d 309. The facts of *Booth* are far more extreme than the facts of the present case. The Railsback property is currently being used as farm land. There is no other sanitary landfill or similar use anywhere nearby. The only similarity is that the Railsback property, like the property in *Booth*, is fairly isolated from residential areas. Although the testimony seems to establish that the land has a higher value if plaintiffs are allowed to proceed with their proposal, the discrepancy between that value and the value of the land as farm and/or residential property is clearly not as extreme as the discrepancy in *Booth*. We find as a matter of fact, therefore, that the resolution's adverse impact upon the value of the Railsback property does not so far outweigh any benefits to public health, safety or welfare as to render the resolution arbitrary and capricious.

Neither deprivation of the most beneficial use of land or a severe decrease in the value of property renders a zoning resolution arbitrary and capricious. *Goldblatt v. Hempstead,* 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962); *United States v. Central Eureka Mining Co.,* 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958). Given the resolution's relationship to the public health, safety, or general welfare, the resolution does not so strip plaintiffs' land of value as to render the resolution invalid. *See also,* 10 O Jur.3 § 210.

### VII.

Plaintiffs' next argument is that the zoning resolution on its face is not a comprehensive plan as required by Ohio Rev.Code § 519.02. As a preliminary matter we observe that this is a state law question insofar as it addresses the Ohio statute unless the plaintiffs can demonstrate that the resolution so fails in comprehensiveness as to render it arbitrary under the standard of *Euclid v. Ambler Realty.* As discussed above, we have already concluded that the resolution bears sufficient relationship to the public health, safety or welfare to render it constitutional. Nevertheless, we shall consider the question of comprehensiveness as the parties offered considerable testimony on this matter. Moreover, we believe that the testimony on this particular issue also goes to demonstrate that the resolution does bear a substantial relationship to the public health, safety or welfare.

Plaintiffs offered the testimony of Mr. Pflum on the issue of comprehensiveness. He testified that the zoning map does not accurately reflect current land uses and includes numerous inaccuracies. He stated that the resolution was vague and not reflective of accepted standards for zoning ordinances. He found many of the definitions unclear or overly broad. He testified that the zoning resolution contains no criteria to govern the decision of the board of zoning appeals. Stating that accepted zoning standards requires the inclusion of a statement of the goals and objectives of Pike Township based upon predicted population growth, Mr. Pflum found no such statement of goals or objectives in the Pike Township resolution. Mr. Pflum also testified that the four districts do not reflect a comprehensive zoning plan because they do not distinguish between single family and multi-family uses, low traffic and high traffic commercial uses, and heavy or light manufacturing. In his view, separate classifications are required for each. The zoning resolution is also not satisfactory in that it fails to regulate signs or parking. He stated finally that the zoning resolution does not include criteria that would permit a reasonable person to conclude whether his proposed land use was governed by the resolution.

Mr. Wharton testified on behalf of the defendants that the resolution is comprehensive, pointing out that the plan for a rural area like Pike Township need not be as detailed as one for an urban area. He testified that because the resolution incorporates a flexible planning process, it was not necessary to be extremely detailed. Therefore, only those words with a special meaning are defined in the resolution. He testified further that the resolution did contain sufficient criteria that a person could ascertain whether a use might be permitted in the resolution. For example, Article IV, Section 6, governs noise, nuisance and contamination. Plaintiffs' expert had challenged this section as containing inadequate criteria. Mr. Wharton pointed out that the standards established were pertinent county, state or federal regulations, and that methods and procedures for determining dangerous or objectionable elements must conform to standards published by the American Standards Association, the Manufacturing Chemist Association, the United States Bureau of Mines and OEPA. In his view, those references are sufficient criteria by which a reasonable person might govern his behavior. He pointed out further that this section puts citizens on notice that the township will not adopt standards more stringent than those used by state or federal agencies.

The thrust of Mr. Wharton's testimony was that this resolution was drafted in consideration of the rural nature of Pike Township. Each of Mr. Pflum's objections was countered with the explanation that such specificity is not required when developing a zoning plan for a rural area.

Mr. Wharton testified that the resolution at issue is a comprehensive plan because it lays out a plan and planning process for zoning and land use of Pike Township. It enumerates districts, it categorizes land uses as compatible or not within certain districts, and includes the entire geographic area of the township. In addition, the plan is based upon the community's characteristics, including present land uses. He further testified that the resolution is comprehensive in that it provides methods for change as Pike Township develops new needs. For example, although there was no need for an industrial zone at the time the zoning resolution was adopted, the commissioners provided for such a district recognizing the likelihood that a need for industrial uses would develop.

"Comprehensive plan" is not defined in Chapter 519 of Ohio Rev.Code. The Ohio Supreme Court has found that a plan was not comprehensive in a case involving a township regulation providing that a one-mile square area of a township be zoned for farming, residential, commercial and recreational uses without specifying which portions of the section could be used for any or all of such purposes and which was not accompanied by a map. *Cassel v. Lexington Township Board of Zoning Appeals*, 163 Ohio St. 340, 127 N.E.2d 11 (1955). The Court found that no one interested in purchasing property in the zoned area could determine in advance to what use that property could be put. Moreover, the Court found that without designations of the uses to which particular areas could be put, there could be no uniform administration of the regulation. Thus because the regulation contained no yardsticks to govern the behavior of the board of zoning appeals, the board could not act other than arbitrarily and capriciously in refusing to issue permits for a particular use.

We conclude that the test for comprehensiveness under *Cassel* is twofold. The plan must be sufficiently detailed that a potential purchaser might ascertain in advance to what use property might be put. Secondly, the plan must contain criteria to guide the decisions of the board of zoning appeals.

Furthermore, for federal constitutional purposes, we find that "comprehensive plan" is a flexible term. Whether a particular resolution is comprehensive or not can be determined only by looking at the particular circumstances of the case, in particular and perhaps most important, the nature of the area which is to be zoned. Using this standard, we find that a comprehensive plan for an urban area is necessarily more detailed than one for a rural area. *Ambler Realty*, 272 U.S. at 387, 47 S.Ct. at 118. We conclude that a zoning plan for a rural area that reflects current uses and allows for change as additional needs develop, and that bears a substantial relationship to the public health, safety or welfare, is a comprehensive plan within the meaning of Ohio Rev.Code § 519.05.

Having reviewed the resolution carefully, as well as the testimony of Mr. Pflum and Mr. Wharton, we conclude that the resolution at issue is a comprehensive plan. Although Mr. Pflum's criticisms of the resolution might be well taken if Pike Township were an urban area, we find that mathematical precision was not required given the rural nature of the area to be zoned. In addition, a potential purchaser should be able to ascertain from the plan to what uses land might be put. In addition, the resolution incorporates criteria governing the actions of the board of zoning appeals. To note only one example, we agree with Mr. Wharton who testified that a decision by the board of zoning appeals to deny a conditional use permit to land in an industrial district to a person proposing to use that land as a sanitary landfill would be arbitrary, assuming the land were otherwise suited for such a use. Finally, we find that the plan is rationally based on the

characteristics of the township, including present uses, projected growth, and the desire to create a flexible plan that would permit coherent and controlled land development as needs arose. Accordingly, we find as a matter of fact that the zoning resolution adopted by the Zoning Commission, Board of Township Trustees and the voters of Pike Township is a comprehensive plan under both state and federal law.

### VIII.

Defendants' final allegation is that the zoning commission did not make use of information and counsel available from appropriate public officials, departments and agencies as required by Ohio Rev.Code § 519.05. They note that the testimony establishes that neither the commissioners nor the trustees contacted OEPA, Ohio Department of Health or other officials or agencies with expertise relating to sanitary landfills to determine if the installation and operation of a landfill in Pike Township would have an adverse effect on the public health, safety or welfare.

Again, compliance with Ohio Rev.Code § 519.05 is a state law question. It has constitutional ramifications only if plaintiffs can demonstrate that the failure to seek out information renders the zoning resolution not substantially related to public health, safety or welfare. We have already determined that the resolution is constitutionally valid. Nevertheless, because the parties offered testimony on this issue, we shall address it briefly. We emphasize that we reach no conclusions as to the precise requirements of § 519.05. It is for the Ohio legislature to establish the scope of the inquiry that a zoning commission must make prior to developing a zoning proposal.

 Section 519.05 states that the zoning commission "may within the limits of the moneys appropriated by the board [of township trustees] for the purpose, employ or contract with such planning consultants and executive and other assistants as it deems necessary." Employing a planner like Mr. Wharton to assist in developing a zoning proposal thus is discretionary. Section 519.05 goes on to state, however, that the zoning commission "shall make use of such information and counsel as is available from appropriate public officials, departments and agencies." In other words, the zoning commission has an affirmative duty to utilize available information and counsel.

Mr. Wharton testified that he collected as much information as possible given the resources available to him. Neither he nor the Zoning Commission hired consultants or experts other than himself. Mr. Wharton discussed demographic studies with Ohio, Indiana and Kentucky planning commissions and looked at population trends based on the census and compared these statistics with those from other counties. He used tax maps in laying out the zoning map. He looked at future development and possible changes in traffic usage by looking at the township's ability to fund roads. He did not contact the Ohio Department of Transportation because state funds are not utilized in building township roads. He did not discuss the Rumpke proposal with the OEPA nor did he ask OEPA for soil information. Mr. Wharton testified that he did not attempt to contact Rumpke or other persons who might have proposed uses. What the zoning commission did do was to make it known that it was involved in the process of collecting information for purposes of developing a zoning proposal.

 Section 519.05 places an affirmative duty on the commission to make use of available information, but the scope of that duty is limited by budgetary considerations. In addition, the scope of the inquiry may be limited by circumstances, including the nature and present uses of the area to be zoned. The testimony in this case clearly establishes that the scope of the Zoning Commission's inquiry was sufficiently broad to permit the development of a comprehensive zoning plan substantially related to public health, safety or general welfare.

Moreover, plaintiffs have cited us to no case or statutory authority requiring a zoning commission to contact persons who have proposals for land use that might be adversely affected by a zoning resolution. In effect, plaintiffs are asking that this Court rule that a zoning commission must consider proposed uses when developing a zoning proposal. However, the cases upon which they rely refer to reasonably foreseeable needs, not proposed uses. *See, e.g., In re Grant,* 30 Ohio Op.2d 108, 110, 1 Ohio App.2d 84, 203 N.E.2d 859, in which the court stated that a comprehensive plan "requires the gathering and analysis of data on existing land uses and the *reasonably foreseeable needs* based upon population, economics, living and transportation patterns and all the many factors that do, or may in the future, affect the unit's physical development" (emphasis added).

██ It is undisputed that the Zoning Commission held public meetings as required by law, after giving appropriate notice, and that persons like Rumpke could have presented information at these meetings had they wished to do so. The Commission had no affirmative duty to go out and seek data on proposed uses but merely to examine existing uses and reasonably foreseeable needs. Obviously, the commissioners and trustees did not regard a sanitary landfill as a reasonably foreseeable need, and indeed intended to block the Rumpke proposal from being executed by enacting zoning. Nonetheless, as the Commission complied with the statutory requirements of notice, we cannot conclude that not seeking out the Railsbacks or Rumpke rendered the inquiry defective under § 519.05.

Having examined all the evidence, including the testimony of the witnesses, we find as a matter of fact that the Zoning Commission did make use of information available from public officials, departments and agencies. We find further that the zoning resolution adopted was based upon an analysis of existing land uses and reasonably foreseeable needs. Accordingly, we hold that the Zoning Commission satisfied the statutory requirements of § 519.05.

## IX.

Having considered all the evidence and giving full consideration to the credibility and demeanor of the witnesses, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

The Pike Township Board of Trustees and Zoning Commission intended for the zoning resolution (plaintiffs' exh. 2) approved by the voters in a special election on August 2, 1983 to block the installation of a sanitary landfill on the Railsback property by Rumpke.

The zoning resolution adopted by the Pike Township Zoning Commission, Board of Trustees and voters does not absolutely bar the installation of a sanitary landfill from all of Pike Township.

The zoning resolution is not so vague that a person of reasonable intelligence would not know that certain uses of land are proscribed.

The Zoning Commission did not consider the effects of the proposed sanitary landfill operation on public health, safety or general welfare.

The Zoning Commission did consider the effects of a sanitary landfill on the life of the community and property values in concluding that they wanted to exclude such a use from Pike Township.

The resolution as adopted bears a substantial relationship to the public health, safety, or general welfare.

The adverse impact of the zoning resolution on the Railsback property does not outweigh the benefits to the public.

The zoning resolution reflects present land uses and incorporates a process that allows for change as additional needs develop.

The Zoning Commission utilized information available from public officials, departments and agencies in drafting the resolution.

The Zoning Commission developed the resolution based upon its analysis of data about present uses and reasonably foreseeable needs.

### Conclusions of Law

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and the Fourteenth Amendment to the Constitution of the United States.

The zoning resolution adopted by the Zoning Commission, Board of Township Trustees, and voters of Pike Township is a reasonable exercise of the police power delegated by the state to the townships of Ohio pursuant to Chapter 519 of the Ohio Revised Code in that the resolution as enacted bears a substantial relationship to the public health, safety, morals and general welfare. *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

The zoning resolution adopted by the Zoning Commission, Board of Township Trustees, and voters of Pike Township is a comprehensive plan within the meaning of Ohio Rev.Code § 519.02.

In developing the resolution, the Zoning Commission made use of information and counsel available from public officials, departments and agencies as required by Ohio Rev.Code § 519.05.

### X.

As the Court finds that the zoning resolution adopted by the Zoning Commission, Board of Township Trustees and voters of Pike Township complies with the requirements of the Fourteenth Amendment to the Constitution of the United States and Chapter 519 of the Ohio Revised Code, we hereby order that judgment in this matter be entered for defendants and against plaintiffs.