FRANCHISE DEVELOPERS, INC. ET AL., APPELLEES, *v.* CITY OF CINCINNATI ET AL., APPELLANTS.

[Cite as Franchise Developers, Inc. *v.* Cincinnati (1987), 30 Ohio St. 3d 28.]

(No. 86-513—Decided April 8, 1987.)

30

---

¹ Some of the conclusions of law adopted by Cincinnati City Council were the following:

"1. The proposed fast food restaurant at 320 Ludlow Avenue would be a valid use of the property under the B-2 Community Business District Regulations, Chapter 21, of the Zoning Code. Pursuant to the provisions of § 102.5 of the Zoning Code, such property may, however, be subject to additional regulations.

"2. The subject address is part of an Environmental Quality District, created by Ordinance 398-1978 of the Council of the City of Cincinnati, and thus subject to the provisions of Chapter 34 of the Zoning Code, the provisions of which, pursuant to § 3401.1, prevail over any conflict with the B-2 underlying zone regulations.

"3. There is a substantial City interest in protecting the stability of neighborhoods and neighborhood business districts, and Ordinance No. 398-1978 is a valid exercise of the legislative authority of the Council of the City of Cincinnati.

"4. The Council may validly provide for land use regulations in ordinances establishing Environmental Quality District Regulations, pursuant to the provisions of Zoning Code § 3400.2.

"5. The phrase 'fast food restaurant' is not defined in any provision of the Zoning Code. It must be defined in accordance with the ordinary and usual meaning of the phrase, as well as by the usage given such phrase by the public and the industry involved.

"6. The provision of the Clifton Community Plan (as approved by the Planning Commission and adopted as part of the Coordinated City Plan) to the effect that fast food restaurants are not appropriate along Ludlow Avenue is a valid expression of the mutual desire of the Clifton neighborhood and the City of Cincinnati.

"7. Inasmuch as the proposed use fails to contribute to the desired mix of commercial activity on Ludlow Avenue, for the reason set forth above, it fails to comply with the provisions of Ordinance No. 398-1978, and is not a permitted use under the Zoning Code of the City of Cincinnati."

*Graydon, Head & Ritchey, Anthony G. Covatta* and *David E. Fowler,* for appellees.

*Richard A. Castellini,* city solicitor, *Ely M. T. Ryder* and *Daniel J. Schlueter,* for appellants city of Cincinnati and James R. Krusling.

*Beckman, Weil, Shepardson & Faller* and *Sidney Weil,* for appellant Clifton Town Meeting.

SWEENEY, J. Subsequent to the decision rendered by the court of appeals, it was adduced in oral argument that the theatre property which is the subject of this litigation was obtained by the city of Cincinnati and was then transferred to a non-profit organization which plans to operate the property as a theatre again. Therefore, FDI and Lipson waived oral argument before this court since the issues involved in this cause are moot with respect to their interests. Given this set of circumstances, our first inquiry is whether the instant cause should be dismissed on grounds of mootness.

Upon a careful review of the entire record, we believe that although the instant matter is technically moot with respect to the plaintiffs, there still remains a debatable constitutional question for this court to resolve. See *Wallace* v. *University Hospitals of Cleveland* (1961), 171 Ohio St. 487, 14 O.O. 2d 383, 172 N.E. 2d 459. In addition, we believe that the cause *sub judice* involves matters of great public interest, thereby vesting this court with jurisdiction to entertain this appeal, even though the controversy is moot with respect to the plaintiffs. See *Wallace, supra; In re Popp* (1973), 35 Ohio St. 2d 142, 64 O.O. 2d 84, 298 N.E. 2d 529; and *State, ex rel. Rudes,* v. *Rofkar* (1984), 15 Ohio St. 3d 69, 15 OBR 163, 472 N.E. 2d 354. Thus, we proceed to resolve this matter under the standard that although a case may be moot with respect to one of the litigants, this court may hear the appeal where there remains a debatable constitutional question to resolve, or where the matter appealed is one of great public or general interest.

In our view, the decision of the court of appeals is clearly erroneous as a matter of law and, therefore, for the reasons that follow, we reverse the judgment of the appellate court below which held DGR III A 2 to be unconstitutionally vague.

Our review of the city of Cincinnati zoning provisions embodied in CMC Chapter 34 reveals that these regulations provide a comprehensive framework over and above the conventional zoning regulations that attempt to preserve and revitalize certain neighborhoods which the city itself deems worthy of special consideration.

In analyzing the constitutionality of the zoning provision in issue, DGR III A 2, we necessarily begin with the strong presumption that the ordinance which incorporated such provision is indeed valid, unless the party attacking the ordinance can overcome the strong presumption of validity. See, *e.g., Leslie* v. *Toledo* (1981), 66 Ohio St. 2d 488, 20 O.O. 3d 406, 423 N.E. 2d 123; *Hudson* v. *Albrecht, Inc.* (1984), 9 Ohio St. 3d 69, 9 OBR 273, 458 N.E. 2d 852. See, also, *Euclid* v. *Ambler Realty Co.* (1926), 272 U.S. 365.

The appellate court below opined that the provision in issue cannot withstand constitutional scrutiny because of the inherent vagueness of its terms. While we are of the opinion that the court of appeals did not give the provision in issue the presumption of validity that it deserves, we also reject its holding for several compelling reasons.

First, the court of appeals below reviewed the constitutionality of the provision in issue solely by its own terms without reference to the context of the provision or its relation to the other provisions of the ordinance in which it is found. In our view, the particular provision in issue is so inextricably interwoven into the other relevant provisions of the ordinance, that a fair reading of this provision cannot be accomplished unless such provision is read *in pari materia* with the other provisions of the DGR, as well as the Urban Design Plan adopted June 7, 1978, and the Coordinated City Plan which Cincinnati City Council found to specifically provide that "[d]rive-in restaurants and fast food restaurants are not appropriate along Ludlow Avenue."

Second, we find that the court below applied an incorrect standard in holding the instant DGR guideline to be unconstitutionally vague. As the court noted in *Rumpke Waste, Inc.* v. *Henderson* (S.D. Ohio 1984), 591 F. Supp. 521, the unconstitutionally vague argument is usually applicable only to criminal ordinances which fail to put persons on notice as to what conduct is prohibited. Such an argument is inherently deficient in a zoning case where the zoning resolution, by its very nature, puts a property owner on notice that use of the property is subject to regulation. *Id.* at 529-530. In the cause *sub judice,* it appears that the property owner was on notice of the overlay zoning restrictions placed on his property. See *Consolidated Mgmt., Inc.* v. *Cleveland* (1983), 6 Ohio St. 3d 238, 6 OBR 307, 452 N.E. 2d 1287.

In addition, we believe the court of appeals erred in finding that land use regulations are clearly prohibited in the instant overlay zoning scheme. In this regard, the appellate court stated that "the cumulative effect of the * * * [Chapter 34] ordinances is to confine any regulatory ac-

tion taken in connection with the creation of an EQD only to the physical or aesthetic aspects of property development; [and that] the regulation of land use apart from the underlying provisions of the zoning code is, quite clearly, prohibited." However, we believe that a close reading of the pertinent provisions of the Cincinnati Municipal Code indicates a clearly contrary conclusion of the legislative goal intended. CMC Section 3401.1 provides:

"Except as otherwise provided herein and in other parts of this zoning code, all regulations of the underlying zone districts shall apply to and control property in an EQ district; provided, however, that *in the case of conflict between the provisions of an underlying zoning district and an EQ district, the provisions of the EQ district shall prevail.*" (Emphasis added.)

Moreover, CMC Section 3400.2 provides that one of the purposes of the overlay zoning scheme is "* * * to protect the public and property owners in the district: (a) From blighting influences which might be caused by the application of *conventional land use* regulations to properties and areas of sensitive environmental qualities;* * *." (Emphasis added.)

Thus, we find that part of the intent of Cincinnati City Council in enacting this overlay zoning scheme was to promote flexibility in environmental quality districts and to prohibit certain land uses that are otherwise permitted in the underlying zoning regulations. Therefore, the appellate court's observation that land use regulations are not a proper subject of the instant overlay zoning provisions is puzzling at best.

Based on the foregoing analysis, we find that the overlay zoning scheme presented here constitutes a proper exercise of the city's zoning authority in its attempt to preserve and protect the character of certain neighborhoods that the city deems important, in order to promote the overall quality of life within the city's boundaries. In this vein, we reaffirm our holding in *Hudson, supra,* where we stated in paragraph one of the syllabus:

"There is a legitimate governmental interest in maintaining the aesthetics of the community and, as such, aesthetic considerations may be taken into account by the legislative body in enacting zoning legislation."

In closing, given the posture of the proceedings below, we wish to reemphasize the due deference courts must afford legislative bodies that promulgate zoning regulations such as those we have considered herein. As this court cogently stated in *Willott* v. *Beachwood* (1964), 175 Ohio St. 557, at 559-560, 26 O.O. 2d 249, at 251, 197 N.E. 2d 201, at 203-204:

"The power of the court in such matters as this is extremely limited, and the court cannot usurp the legislative function by substituting its judgment for that of the council. Municipal governing bodies are better qualified, because of their knowledge of the situation, to act upon these matters than are the courts.

"* * *

"* * * The power of a municipality to establish zones, to classify prop-

erty, to control traffic and to determine land-use policy is a legislative function which will not be interfered with by the courts unless such power is exercised in such an arbitrary, confiscatory or unreasonable manner as to be in violation of constitutional guaranties."

Accordingly, since we find that the DGR III A 2 does not run afoul of either the state or federal Constitutions, the judgment of the court of appeals is hereby reversed.

*Judgment reversed.*

MOYER, C.J., LOCHER, HOLMES, DOUGLAS and BROGAN, JJ., concur.

WRIGHT, J., concurs in part and dissents in part.

BROGAN, J., of the Second Appellate District, sitting for H. BROWN, J.

WRIGHT, J., concurring in part and dissenting in part. In my view this case has little public or general interest since it involves a "one of a kind" situation vis-a-vis the appellees and the city of Cincinnati which effectively resolved the controversy by purchasing appellee Lipson's property. The facts in the case when viewed *in toto* as opposed to the precis form presented by the majority negate the possibility that this case can be treated as authority for anything aside from the broad propositions contained in the syllabus which are universally accepted law.

Thus, while I concur in the syllabus law promulgated in the majority opinion, I respectfully suggest that this appeal should have been dismissed as moot when appellees noticed this court that they were withdrawing from this appeal.