CASH, Appellant,

v.

CINCINNATI BOARD OF ZONING APPEALS et al., Appellees.

[Cite as *Cash v. Cincinnati Bd. of Zoning Appeals* (1996), 117 Ohio App.3d 319.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–950435.

Decided Dec. 31, 1996.

*Cash, Cash, Eagen & Kessel* and *Michael J. Stegman,* for appellant.

*Fay D. Dupuis,* City Solicitor, and *Richard Ganulin,* for appellee Zoning Board of Appeals.

———————

DOAN, Judge.

Intervening appellee, Thomas W. Tillsley, submitted an application to the city of Cincinnati for approval to build a single-family residence on an irregular lot at 10 Guido Street in Mt. Adams. Tillsley, an architect, acted on behalf of intervening appellee, Neil K. Bortz, who planned to live in the residence. The property was actually owned by intervening appellee, Towne Buildings Group, Inc., in which Bortz was an owner and officer.

Before the hearing on the application, intervening appellees modified the building plans several times and conducted negotiations with neighboring landowners. Despite some opposition to the plan, the hearing examiner approved the building, subject to certain conditions. Appellant, Albert D. Cash, an adjoining landowner and the primary opponent of the plan, appealed the hearing examiner's decision to appellee, the Zoning Board of Appeals of the City of Cincinnati. After the board affirmed the hearing examiner's decision, Cash appealed to the Hamilton County Court of Common Pleas, which, in turn, affirmed the board's decision. He now appeals the common pleas court's decision to this court.

Under the Cincinnati Zoning Code, the property is located in an R–6 residential zone, as well as an Environmental Quality–Hillside District ("EQ–HS"). It is a small, triangular lot, situated on the brunt of the steep Mt. Adams hillside. Bortz proposed to build a three-story residence on the property, which would enjoy a spectacular view of the city and the river and which would be situated substantially below the grade of the street. However, the construction of this residence required area and height variances from the requirements of the zoning code. A single-story residence had existed on the property but had been razed decades previously. In 1986, a three-story, two-family residence on the same site was approved by the hearing examiner, but was never built, and the approval later expired. Bortz's residence was to be built on the same footprint that had been previously approved.

Cash owns the adjacent real estate at 14–16 Guido Street. While the property at 10 Guido Street has been unimproved and unoccupied, Cash has enjoyed the river view from his property. Bortz's proposed residence will virtually eliminate that view and, Cash claims, substantially lower the market value of his property. Cash further claims he did not know of the 1986 building approval until after the time for appeal had expired, and that he would have opposed it had he known.

The subject property is located immediately adjacent to the Church of the Immaculata, a major historic landmark. The public enjoys stately views of the

church from many places in Mt. Adams and the river valley. Cash and others expressed concern that the building would impair the view of the church and of the Mt. Adams hillside generally. However, at the hearing, computer simulations demonstrated the look of the residence from various places in Mt. Adams and the valley below so the examiner could see the potential impairment. Additionally, Bortz had agreed to a city requirement that the building be gray and monochromatic so it would blend in with the hillside. He also submitted a plan for landscaping, although the evidence showed that some of the plants proposed were inappropriate for the conditions and would not change with the seasons as provided for in the EQ–HS guidelines.

Testimony at the hearing further showed that a problem existed with slippage along the hillside and that the foundation of the proposed residence would help to stabilize it. Bortz also agreed to stabilize and reinforce a retaining wall left from the earlier razed structure, which all agreed was sure to fall. However, Bortz had not secured an agreement regarding the wall with the owners of some nearby condominiums on whose property some of the wall was located.

In his report, the hearing examiner specifically concluded that "the proposed residence will not be in conflict with the General Guidelines or the Specific Guidelines" for the EQ–HS district. He granted the application for development including the area variances. However, approval was subject to several conditions, including (1) that the proposed development meet all the applicable codes and regulations of the city of Cincinnati, (2) that the building be set back at least an additional one and one-half feet from the Guido Street property line to comply with the requirements of the underlying R–6 zone, (3) that a revised landscape plan be submitted and approved, and (4) that an agreement be reached with the owners of the condominiums concerning the rebuilding of the retaining wall.

In his sole assignment of error, Cash states that the common pleas court erred in affirming the decision of the zoning board of appeals. He argues that the administrative approval of the development was contrary to law because it failed to protect property values, that the hearing examiner failed to make specific findings required in the zoning code for the granting of the variances, and that the granting of the variances allowed the developer to construct a substantially larger building than that permitted by the zoning code. We find this assignment of error is not well taken.

The role of the court of common pleas in an appeal from a decision of an administrative agency is limited to determining whether the agency's decision is supported by a preponderance of substantial, reliable, and probative evidence. R.C. 2506.04; *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (1993), 66 Ohio St.3d 452, 456, 613 N.E.2d 580, 584. In undertaking this review, "the court may not, especially in areas of administrative expertise,

blatantly substitute its judgment for that of the agency." *Budd Co. v. Mercer* (1984), 14 Ohio App.3d 269, 273–274, 14 OBR 298, 303, 471 N.E.2d 151, 156. In reviewing the decision of the court of common pleas, a court of appeals must determine whether the trial court abused its discretion. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, 1241. An abuse of discretion " 'implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " *Id.*, quoting *State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster* (1986), 22 Ohio St.3d 191, 193, 22 OBR 275, 277, 489 N.E.2d 288, 290.

 "Zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be entitled." Therefore, they must be strictly construed in favor of the property owner, and "the scope of restrictions cannot be extended to include limitations not clearly prescribed." *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 261, 20 O.O.3d 244, 246, 421 N.E.2d 152, 154.

An environmental quality district under the Cincinnati zoning code is an overlay district whose purposes are "to assist the development of land and structures to be compatible with the environment and to protect the quality of the urban environment in those locations where the characteristics of the environment are of significant public value and are vulnerable to damage by development permitted under conventional zoning and building regulations." Cincinnati Municipal Code 1459–100; *Franchise Developers, Inc. v. Cincinnati* (1987), 30 Ohio St.3d 28, 29, 30 OBR 33, 34, 505 N.E.2d 966, 968. The Ohio Supreme Court has stated that the intent of Cincinnati City Council in enacting the overlay scheme was "to promote flexibility in environmental quality districts and to prohibit certain land uses that are otherwise permitted in the underlying zoning regulations." *Id.* at 33, 30 OBR at 37, 505 N.E.2d at 971. Additionally, the EQ–HS districts provide regulations to prevent excessive soil erosion and landslides and "to preserve the prominent view from the top or from the slopes of the hillside, and the natural contours thereof." Cincinnati Municipal Code 1459–211(a).

Cincinnati Municipal Code 1459–408 provides that "[d]ecisions on applications for development permission shall be made by the Hearing Examiner." That section further provides:

"The Hearing Examiner shall approve the application if it conforms with all applicable laws and ordinances, and is in the public interest. The application may be approved subject to conditions as necessary to ensure that the application is lawful and in the public interest. Otherwise the application shall be disapproved. * * * In determining whether the application is in the public interest, the Hearing Examiner shall consider those factors listed in [section] 1477.416 which are relevant and apply them in light of the examiner's professional training and

experience. The failure of the proposed work to confirm with any single factor shall not necessarily be a sufficient basis for denial. The application which maximizes both the public interest and private benefits shall be approved."

Relevant factors listed in Section 1477–416 include "guidelines adopted or approved by Council for the district in which the proposed work is located." Cincinnati City Council did adopt guidelines for environmental quality districts pursuant to Cincinnati Municipal Code 1459–201. They include the following:

"Buildings should be planned and designed to relate well to other buildings in order to complement them, not neglect them, using choices of building shapes, sizes and orientation, to be harmonious with other buildings and the hillside environment."

"Buildings should be planned and designed to respect the views from other buildings and from public viewing placed within the district."

Additionally, the zoning code provides that regulations for land use, lot area, coverage, density, setback requirements, building height and other areas in environmental quality districts shall be determined by the underlying zoning and other applicable regulations. Those regulations, except for land use, density and floor area limitations, can be modified upon a finding ·by the hearing examiner that two or more of several listed conditions will be met. Cincinnati Municipal Code 1459–406.

■ We have reviewed the record, and we find that the hearing examiner conducted a thorough inquiry into the matter, took proper issues into consideration, and made adequate findings to support his decision. Substantial, reliable, and probative evidence was presented to show that the proposed building complies with both the letter and spirit of the zoning code and the requirements for the EQ–HS district. See *Gleason v. Council of the City of Cincinnati* (June 9, 1993), Hamilton App. No. C–920183, unreported, 1993 WL 380014. The evidence showed that the building would be designed, colored, and landscaped to blend in with the hillside and that it will actually help to support it. Further, the hearing examiner could reasonably make the factual determination from the evidence presented, including the computer simulations, that the proposed building would not detrimentally impair the public view or the majority of the private views. In our appellate capacity, we must give proper deference to that decision. *Franchise Developers, supra,* 30 Ohio St.3d at 33, 30 OBR at 37–38, 505 N.E.2d at 971. The hearing examiner's decision was well considered and properly balanced the public interest, the interest of the adjoining landowners, and the interest of the owner of the lot in question, who is entitled to have the zoning regulations construed in his favor.

The hearing examiner also made the proper findings necessary for the granting of variances in an environmental quality district. Further, the variances granted were relatively minor. The evidence shows that an adequate structure could not be built on this property without area variances and that strict application of the zoning requirements would be inequitable. See *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 86, 23 OBR 212, 214–215, 491 N.E.2d 692, 695, certiorari denied (1986), 479 U.S. 986, 107 S.Ct. 576, 93 L.Ed.2d 579. A variance "is designed to afford protection and relief against unjust invasions of private property rights and to provide a flexible procedure for the protection of constitutional rights." *Consolidated Mgmt., Inc. v. Cleveland* (1983), 6 Ohio St.3d 238, 240, 6 OBR 307, 309, 452 N.E.2d 1287, 1289.

Though Cash raised many issues, his real interest is clearly the impairment of his view. However, he is only one landowner, and the elimination of his view is only one factor to be considered. No prescriptive right to the use of light and air over the property of an adjoining landowner can be acquired. *State ex rel. Schiederer v. Preston* (1960), 170 Ohio St. 542, 546, 11 O.O.2d 369, 371, 166 N.E.2d 748, 751; *Letts v. Kessler* (1896), 54 Ohio St. 73, 82, 42 N.E. 765, 766–767. There is no private right to a view without an express easement, and the Cincinnati Zoning Code does not confer one. See *Preston, supra*, at 544–545, 11 O.O.2d at 370–371, 166 N.E.2d at 750; *Jaeger v. Topper* (1921), 103 Ohio St. 350, 357–358, 133 N.E. 82, 84. Further, Cash was aware that someone else owned the lot next to his and the possibility always existed that the owner would build a structure there which might interfere with his view. See *Consolidated Management, supra*, 6 Ohio St.3d at 242, 6 OBR at 310–311, 452 N.E.2d at 1291. Consequently, we find his arguments unpersuasive.

Accordingly, we hold that the common pleas court did not abuse its discretion in affirming the decision of the zoning board of appeals. We overrule Cash's assignment of error and affirm the decision of the common pleas court.

*Judgment affirmed.*

MARIANNA BROWN BETTMAN, P.J., and SHANNON, J., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.