Karen KOHRMAN et al., Appellants,

v.

CINCINNATI ZONING BOARD OF APPEALS et al., Appellees.

[Cite as *Kohrman v. Cincinnati Zoning Bd. of Appeals,*
165 Ohio App.3d 401, 2005-Ohio-5965.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–040881 and C–040882.

Decided Nov. 10, 2005.

Taft, Stettinius & Hollister, L.L.P., and Stephen M. Griffith Jr., for appellant Karen Kohrman.

Peter E. Koenig and Laurie M. Harmon, for appellants Larry and Evelyn McCord and Mitch and Jackie Meyers.

Julia L. McNeil, City Solicitor, and Richard Ganulin, Assistant City Solicitor, for appellees Cincinnati Zoning Board of Appeals and city of Cincinnati.

Keating, Muething & Klekamp, P.L.L., Joseph L. Trauth Jr., and Thomas M. Tepe Jr., for appellee Menke Development.

GORMAN, Judge.

{¶ 1} Plaintiffs-appellants consist of a group of Mount Adams residents who have, for over two years, been contesting the city's approval of a condominium project proposed by defendant-appellee Menke Development. The residents appeal the trial court's judgment upholding two related decisions of the Cincinnati Zoning Board of Appeals ("ZBA"), both of which granted Menke permission to proceed with its project. In three assignments of error, the residents allege (1) that the trial court erred in finding that the ZBA and the city's hearing examiner, who first heard this case, properly granted area variances from the requirements of the zoning code, (2) that the trial court erred in affirming the decision of the ZBA to modify and vacate certain conditions imposed by the city's hearing examiner, and (3) that the trial court erred in finding that the hearing examiner had followed proper procedures. Because we conclude that the residents' first and second assignments of error have merit, we reverse the judgment of the common pleas court in part and remand this case for further proceedings.

## I. Facts

{¶ 2} Menke seeks to construct a single building housing 26 condominium units at 360 Oregon Street in Mount Adams. Mount Adams is located in an R–6 multifamily, high-density zone and in an Environmental Quality Hillside ("EQ–HS") zoning district. The zoning code sets forth use and area requirements for

an R–6 zone. The code further lists numerous overlay guidelines that must be considered when planning new construction in an EQ–HS district. In addition to the general EQ–HS guidelines, there are several guidelines specific to Mount Adams, which are listed as EQ–HS–4 guidelines in the city's zoning code.

{¶ 3} Before beginning construction, Menke applied to the city for permission to build. City staff reviewing authority Steven Briggs assessed Menke's application and found that Menke's proposed plan failed to meet numerous EQ–HS and EQ–HS–4 overlay guidelines. In part, these guidelines provide that buildings should be planned and designed to complement the Mount Adams hillside. The guidelines also state that new construction should be planned and designed to respect the views from other buildings.

{¶ 4} After conducting a public hearing, and based upon Briggs's report, site visits, and other evidence, a hearing examiner for the city approved Menke's application subject to 13 conditions. Dissatisfied with four of these conditions, Menke appealed the hearing examiner's decision to the ZBA. Specifically, Menke requested that condition number 6, which called for a rear-yard setback of 20 feet, be modified to impose a setback of only 11 feet. Menke also requested that the ZBA vacate in full conditions 10, 11, and 12. Condition 10 required Menke to reduce the height of its proposed building by three feet. Condition 11 required Menke to step the building in increments to mirror the hillside slope of Oregon Street, and condition 12 required Menke to modify the parking garage to accommodate the stepped increments of the building. The hearing examiner had imposed each of these four conditions to bring Menke's project into compliance with EQ–HS and EQ–HS–4 guidelines.

{¶ 5} The residents also appealed to the ZBA, arguing, among other things, that the hearing examiner failed to follow proper procedures and thereby violated the residents' due-process rights.

{¶ 6} Following a hearing, the ZBA issued two brief decisions. One granted Menke's requested relief in full. The other summarily denied the residents' appeal. The residents appealed both of these decisions to the common pleas court, which affirmed. The residents now appeal the trial court's judgment, arguing, in essence, that the ZBA should not have granted area variances from the requirements of the zoning code. The residents also contend that their own appeal to the ZBA should have been granted.

## II. Standard of Review

{¶ 7} The common pleas courts and the courts of appeals review administrative appeals under differing standards of review. R.C. 2506.04; *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433. The common pleas court is required to weigh the evidence in the

record and to determine whether the order or decision at issue is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." R.C. 2506.04; *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848, fn. 4. The standard of review for courts of appeals, however, is limited to questions of law and " 'does not include the same extensive power to weigh "the preponderance of substantial, reliable and probative evidence" as is granted to the common pleas court.' " *Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433, quoting id. This court is limited to determining only whether the common pleas court abused its discretion in weighing the evidence. Id. at 148, 735 N.E.2d 433. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

## III. Menke's Appeal to the ZBA

{¶ 8} As we have already noted, the ZBA sustained Menke's appeal and granted area variances from the requirements of the zoning code. The common pleas court affirmed the ZBA's decision. In their first assignment of error, the residents assert that the ZBA and the trial court both failed to apply, or failed to properly apply, the area-variance test set forth by the Ohio Supreme Court in *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692. We agree.

### *The* Duncan *Factors*

{¶ 9} A party seeking an area variance must be able to demonstrate that compliance with the requirements of a zoning regulation creates "practical difficulties." Id. at 86, 23 OBR 212, 491 N.E.2d 692. "The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance." Id.

■ {¶ 10} Overall, "practical difficulties" exist when an area zoning requirement unreasonably deprives the property owner of a permitted use. Id. The question in this case is, however, what did the zoning code require of Menke?

### The EQ–HS Guidelines and the ZBA's Decision

■ {¶ 11} In determining whether to sustain Menke's appeal, the ZBA focused its deliberations on whether Menke had demonstrated that it was entitled to area variances from R–6 zoning requirements. It afforded little, if any, weight to the EQ–HS guidelines. The residents correctly argue that this was error. When there is a conflict between EQ–HS guidelines and the provisions of the underlying zoning code, EQ–HS guidelines prevail. Cincinnati Municipal Code 1459–301; *Franchise Developers, Inc. v. Cincinnati* (1987), 30 Ohio St.3d 28, 33, 30 OBR 33, 505 N.E.2d 966. In this case, such a conflict existed. There was no requirement in the R–6 zoning regulations that new construction be planned to respect the views from other buildings or that new construction be planned to complement the Mount Adams hillside. The guidelines did require these things. The hearing examiner found that conditions 6, 10, 11, and 12 were necessary to bring Menke's project into compliance with EQ–HS and EQ–HS–4 guidelines.[1] The ZBA failed to recognize that it was Menke's burden to demonstrate that it should be granted area variances from the guideline requirements—and not from the requirements of the underlying R–6 zoning regulations.

{¶ 12} Since the ZBA failed to recognize the role of the EQ–HS guidelines, it did not properly analyze the evidence and the arguments before it. But this failure alone is not necessarily a basis for reversal. It is axiomatic that a tribunal may be correct for the wrong reasons, and when that happens, there will ordinarily be an affirmance. *Cook v. Cincinnati* (1995), 103 Ohio App.3d 80, 90, 658 N.E.2d 814, citing *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 637 N.E.2d 306. But we are compelled to reverse the judgment of the common pleas court, given its failure to recognize the proper role of the overlay guidelines and our limited standard of review, because we may not independently examine the evidence in the record to determine whether the trial court was "correct for the wrong reasons." See R.C. 2506.04.

### The EQ–HS Guidelines and the Common Pleas Court's Decision

{¶ 13} In its decision affirming the ZBA, the common pleas court found that the guidelines were simply that—guidelines. On remand, the trial court must determine whether Menke met its burden to demonstrate that it was entitled to

---

1. We note that the residents do not currently take issue with the propriety of the hearing examiner's conditions. The residents and Menke both focus their arguments on whether the ZBA and the trial court properly concluded that Menke was entitled to area variances.

area variances from the EQ–HS requirements, as those requirements were reflected in the hearing examiner's conditions. The trial court's failure to recognize the predominance of the guidelines was particularly problematic in its analysis of whether Menke had demonstrated practical difficulties regarding condition ten, which required Menke to reduce the height of its building by three feet to respect the views from other buildings. Citing this court's decision in *Cash v. Cincinnati Bd. of Zoning Appeals* (1996), 117 Ohio App.3d 319, 690 N.E.2d 593, the trial court found that the zoning code did not confer a right to a view, thereby justifying the ZBA's decision to vacate condition ten. But *Cash* is distinguishable from the present case. The hearing examiner in *Cash* found that the construction plans at issue did not violate EQ–HS guidelines. Id. at 324, 690 N.E.2d 593. Here, the hearing examiner determined that Menke's plans did violate the guidelines, and that compliance with EQ–HS guidelines required Menke to reduce the height of its building. In this case, the zoning code did, indeed, confer a right to a view. See *Segal v. Folkers* (Nov. 6, 1998), 1st Dist. Nos. C–970986 and C–970993, 1998 WL 769722 (EQ–HS guidelines ensure that new buildings in Mount Adams are planned to respect the views of existing property owners).

{¶ 14} In sum, the trial court must examine the evidence in the record to determine whether Menke met its burden before the ZBA to demonstrate that it should have been granted variances from the EQ–HS guidelines, as those requirements were reflected in conditions 6, 10, 11, and 12 of the hearing examiner's decision. Resolution of this issue is closely tied to our analysis of the residents' next argument, which also has merit.

### The Evidence in the Record

{¶ 15} In their second assignment of error, the residents correctly allege that the trial court erred in holding that the decision of the ZBA sustaining Menke's appeal was supported by the preponderance of substantial, reliable, and probative evidence.

{¶ 16} While the trial court thoroughly analyzed the seven *Duncan* factors with specific citations to the record, we hold that it failed to cite "substantial, reliable, and probative" evidence. R.C. 2506.04. A hearing before the ZBA is a record hearing. Cincinnati Municipal Code 1449–15(d). Consequently, the ZBA was limited to reviewing the evidence that had been presented to the hearing examiner, as well as the legal arguments based upon that evidence. See id. A number of the trial court's citations were to statements made during oral argument before the ZBA, instead of to evidence that was presented to the hearing examiner. For example, in support of its conclusion that Menke had demonstrated the second *Duncan* factor, i.e., that the variances it requested were

not substantial, the trial court cited Rick Menke's argument before the ZBA that other developers in Mount Adams had been granted similar variances. While Menke's statement may have been supported elsewhere in the record, the trial court erred in relying on assertions made during oral argument to affirm the ZBA's decision.

{¶ 17} We also take issue with the trial court's finding that Menke had demonstrated practical difficulties because conditions 10, 11, and 12 made it impossible for Menke to comply with the Fair Housing Act and the Ohio Building Code. To support this conclusion, the trial court cited an argument made by architect Jerry Foote at the ZBA hearing. We recognize that Foote's argument was a legal one, and therefore appropriately made to the ZBA. But Foote was a layman, and his "legal" argument consisted of simple, conclusory statements unaccompanied by citation to legal authority and without proper legal analysis. Furthermore, the trial court failed to determine whether the factual basis for Foote's argument was supported by the evidence that had been presented to the hearing examiner. For these reasons, we conclude that the common pleas court erred in relying on Foote for the proposition that compliance with conditions 10, 11, and 12 would have violated the law.

{¶ 18} Consequently, we hold that the trial court abused its discretion in relying on those parts of the record that it did in affirming the ZBA's decision sustaining Menke's appeal.

{¶ 19} This holding is not necessarily determinative of the *Duncan* issue, however. There may very well have been proper and sufficient evidence in the record to support the ZBA's decision sustaining Menke's appeal. But as we have already noted, given our limited standard of review, this court may not make such an independent factual determination. See R.C. 2506.04. So we must remand this case to the trial court with instructions to review and weigh the evidence that was a part of the record before the ZBA in light of the applicable *Duncan* factors, affording proper weight to the overlay guidelines, to determine whether the ZBA's decision sustaining Menke's appeal was a proper one.

### IV. The Residents' Appeal to the ZBA

{¶ 20} The residents also contend, in their third assignment of error, that the trial court erred by affirming the ZBA's decision to deny the residents' own appeal of the hearing examiner's decision. The residents raise only two issues in connection with their own ZBA appeal: (1) whether the ZBA erred in affirming the hearing examiner's decision because the hearing examiner failed to apply the *Duncan* factors before granting Menke side- and rear-yard setback variances and (2) whether the residents' due-process rights were violated.

{¶ 21} The residents' first argument confuses the issue in this case. As we have previously stated, the hearing examiner did not grant area variances from the requirements of the zoning code, but instead imposed conditions 6, 10, 11 and 12 to bring Menke's project into compliance with the zoning code. Since *Duncan* did not apply to the hearing examiner's decision, this argument has no merit.

{¶ 22} As to the residents' second argument, upon a review of the record, we hold that the trial court did not abuse its discretion in ruling that the hearing examiner conducted the requisite public hearings and otherwise properly followed the procedures set forth in Chapter 13 of the Cincinnati Municipal Code. Therefore, the third assignment of error is overruled. See R.C. 2506.04; *Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433.

## V. Conclusion

{¶ 23} For the foregoing reasons, we reverse the judgment of the trial court affirming the decision in Menke's ZBA appeal and remand the case for further proceedings. On remand, the common pleas court must weigh the evidence that was properly before the ZBA to determine whether Menke met its burden under *Duncan* to demonstrate that it was entitled to area variances from the requirements of the EQ–HS guidelines, as those requirements were reflected in conditions 6, 10, 11, and 12 of the hearing examiner's decision. In all other respects, the judgment appealed from is affirmed.

Judgment affirmed in part
and reversed in part,
and cause remanded.

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.