DECISION.
{¶ 1} Plaintiff-appellant, Paddock Point, LLC, appeals the judgment of the Hamilton County Court of Common Pleas denying a zoning permit in an administrative appeal under R.C. Chapter 2506.
 Paddock Point's Proposal {¶ 2} In 2003, Paddock Point applied for a zoning permit to build a car wash in the North Avondale neighborhood of Cincinnati. The car wash would be an unattended business with five self-serve bays and a number of coin-operated vacuums.
 {¶ 3} The site in question was subject to two distinct zoning designations. Sixty percent of the property was zoned "B-4," a general business district that permitted a commercial use such as a car wash. The remaining forty percent was designated "R1-(T)," also known as a "transition district." A hearing examiner for the city conducted a review of the plans and held hearings to discuss the proposed business.
 {¶ 4} A number of North Avondale residents were permitted to intervene as defendants. Audricia Brooks and Julia Brooks owned a single-family residence adjacent to the site of the proposed car wash and opposed the requested permit. They were joined in their opposition by the North Avondale Neighborhood Association. We refer to the community representatives collectively as "the Association."
 {¶ 5} The hearing examiner ultimately approved the car wash subject to eleven conditions concerning the construction and operation of the business. Paddock Point appealed the hearing examiner's decision to the Board of Zoning Appeals of the City of Cincinnati ("the ZBA"), arguing that the conditions were improper. The Association also appealed on the basis that a car wash was not an appropriate use for the property.
 {¶ 6} The ZBA conducted a hearing on Paddock Point's application. At that hearing, the Association voiced its opposition to the car wash. It argued that a car wash was an inappropriate use under the provisions of the Cincinnati zoning code governing transition districts. Specifically, it maintained that the car wash would create excessive noise and traffic, would become a haven for drug trafficking and other crime, and would be incongruous with the historical, architectural, and general aesthetic characteristics of the neighborhood.
 {¶ 7} The Association also argued that North Avondale had attempted to eliminate automotive-related businesses from the community through the promulgation of the 1974 North Avondale Community Master Plan and the 1995 North Avondale Reading Road Urban Design Plan, both of which had been approved by Cincinnati City Council or by the city's planning commission.
 {¶ 8} Paddock Point contended that the car wash would be a valuable asset to the community because the property had been a vacant eyesore for a number of years. It argued that the designs for the business took into consideration the aesthetics of the community and the need to protect the safety and comfort of the community's residents.
 {¶ 9} The ZBA reversed the decision of the hearing examiner and denied the zoning permit. Paddock Point then filed an administrative appeal under R.C. Chapter 2506, and the trial court upheld the ZBA's decision.
 The Zoning Code's Transition Districts {¶ 10} In its first assignment of error, Paddock Point now argues that the trial court erred in upholding the ZBA's decision because the Cincinnati zoning code did not prohibit a car wash in the R-1(T) transition district.
 {¶ 11} Under R.C. 2506.04, the common pleas courts and the courts of appeals apply different standards of review for administrative appeals. The common pleas court must determine if the order or decision of the administrative board or agency is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."[1] With respect to the assessment of the evidence, only when the record lacks a preponderance of reliable, probative, and substantial evidence to support the agency's decision may the common pleas court reverse, vacate, modify, or remand.[2]
 {¶ 12} In contrast, the standard of review for the court of appeals is limited to questions of law and "does not include the same extensive power to weigh `the preponderance of substantial, reliable, and probative evidence,' as is granted to the common pleas court."[3] When assessing the evidence, an appellate court cannot substitute its judgment for that of the common pleas court, except within its limited statutory scope of review and is to determine only if the common pleas court abused its discretion.[4]
 {¶ 13} Because the proposed car wash was located, in part, in a transition district, the ZBA applied the R-1(T) guidelines of the zoning code.
 {¶ 14} Approval for a zoning permit in a transition district was controlled by Cincinnati Municipal Code 1477-416. Under that section, a development was to be approved if "the work is lawful and in the public interest. Otherwise, the work shall be disapproved. * * * In determining whether the work is in the public interest, the decision making authority shall consider [the listed factors] which are relevant to the work and apply them in light of his or her professional training and experience."
 {¶ 15} So while Paddock Point is correct in stating that the zoning code did not explicitly prohibit a car wash in a transition district, the scheme of the code provided that the appropriateness of a given use was to be evaluated in terms of the use itself and in terms of the specific characteristics of the use proposed by the applicant.
 {¶ 16} In this case, the ZBA relied on the following factors listed in Cincinnati Municipal Code 1477-416: (1) the underlying zoning district regulations; (2) guidelines adopted by the city council for the district in which the proposed work was located; (3) any applicable urban design or other plan officially adopted by the city council or approved by the planning commission; (4) the predominant land use, building and structure patterns in the surrounding community; (5) any proposed amendment to the zoning code under consideration by the city planning commission or city council; and (6) the public peace, health, safety, or general welfare.
 {¶ 17} The ZBA visited the site, considered the arguments of Paddock Point and the opponents of the development, and weighed the factors listed in the ordinance. The ZBA concluded that the car wash was inconsistent with the surrounding residential uses and with the historical character of the neighborhood. The ZBA took into consideration the 1974 and 1995 urban design plans and concluded that the car wash was not appropriate in light of those plans.
 {¶ 18} Based on the evidence adduced before the hearing examiner, we cannot say that the trial court abused its discretion in upholding the ZBA's decision. There was evidence that the car wash would detract from the neighborhood's general aesthetics and would lead to an increase in crime, traffic, and noise. There was also evidence that the business would be inconsistent with the urban design plans, which reflected the desire to eliminate automotive-related businesses in the area. Accordingly, the trial court's decision to affirm the ZBA's determination was not unreasonable.
 {¶ 19} In arguing that the trial court erred in affirming the ZBA, Paddock Point cites this court's holding in Ware v. ZoningBoard of Appeals, Village of Fairfax.[5] In Ware, we reversed the determination that a daycare facility was not a permitted use under the village zoning code.[6] We held that a daycare facility was a permitted use because it was sufficiently similar to other uses specifically permitted by the zoning code.[7]
 {¶ 20} Ware is distinguishable from the case at bar. In this case, the zoning code did not enumerate any specific permitted uses. Rather, it required the ZBA to determine the propriety of the proposed use based on the factors listed in the ordinance. Thus, our holding in Ware is inapposite.
 {¶ 21} Paddock Point also cites Kohrman v. Cincinnati Bd. OfZoning Appeals[8] for the proposition that the applicable environmental quality ("EQ") zoning district guidelines in this case permitted the construction of a car wash. In Kohrman, we held that when EQ guidelines conflict with the underlying zoning regulations, the EQ guidelines prevail.[9]
 {¶ 22} Here, Paddock Point has not cited any portion of the applicable EQ guidelines that conflicted with the underlying zoning regulations. And as the ZBA correctly argues, there was no provision in the EQ guidelines that explicitly created a right to operate a car wash or any other specific type of business in the parcel's EQ district. Accordingly, Kohrman is not controlling authority in this case. We overrule the first assignment of error.
 Community Plans and Proposed Zoning Changes {¶ 23} In the second and final assignment of error, Paddock Point argues that the trial court erred in upholding the decision of the ZBA because the ZBA had relied on regulations that were not in the zoning code.
 {¶ 24} Paddock Point first argues that the ZBA incorrectly relied on the 1974 North Avondale Master Plan. Paddock Point contends that the guidelines had been abandoned, in particular the guideline indicating that automotive-related businesses were disfavored. Paddock Point notes that the property at issue here had been approved in 1980 for use as a convenience store with gasoline pumps.
 {¶ 25} We are not persuaded that the master plan had been abandoned. First, the convenience store did not come to fruition, and the site had been developed for use as a restaurant. And there was evidence in the record that other automotive-related businesses in the area had been converted to other uses. In any event, we agree with the ZBA that a single deviation from the master plan did not indicate a decision to abandon the guidelines altogether. Under Cincinnati Municipal Code 1477-416, the ZBA properly considered the master plan as one of the factors in the approval process, and we are not convinced that the ZBA gave it undue weight in rejecting the car wash.
 {¶ 26} Paddock Point also argues that the ZBA improperly relied upon the 1995 North Avondale Reading Road Urban Design Plan. Paddock Point argues that the community center and office complex envisioned in that plan had not been developed, and that the plan had no application to private development on the site in question.
 {¶ 27} Once again, we are not persuaded. Although the development described in the 1995 plan had not yet come to pass, there was no evidence in the record that the plan had been abandoned. And the ZBA could have reasonably concluded that the construction of a car wash would have been detrimental to the proposals in the plan. Because the zoning code permitted the ZBA to consider the 1995 plan, there was no abuse of discretion in the trial court's affirmance of the ZBA's decision.
 {¶ 28} Finally, Paddock Point argues that the ZBA improperly relied on a pending change in the property's zoning designation in rejecting the plans for a car wash.
 {¶ 29} After Paddock Point had applied for its zoning permit, a change in the zoning code prohibited car washes on the site. Paddock Point argues that the ZBA improperly considered the pending zoning change in denying the permit.
 {¶ 30} Once again Cincinnati Municipal Code 1477-416 authorized the ZBA to consider proposed changes to the zoning code in ruling on a permit for a transition district, and the trial court did not abuse its discretion in affirming the ZBA's determination. We overrule the second assignment of error.
 Conclusion {¶ 31} We overrule the assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
Gorman and Painter, JJ., concur.
[1] R.C. 2506.04.
[2] Dudukovich v. Lorain Metro. Hous. Auth. (1979),58 Ohio St.2d 202, 207, 389 N.E.2d 1113.
[3] Henley v. Youngstown Bd. of Zoning Appeals,90 Ohio St.3d 142, 147, 2000-Ohio-493, 735 N.E.2d 433, quoting Kisil v.Sandusky (1984), 12 Ohio St.3d 30, 34, 465 N.E.2d 848, fn. 4. See, also, Saeed v. Cincinnati, 1st Dist. No. C-030854, 2004-Ohio-3747, at ¶ 21.
[4] Saeed, supra, at ¶ 21, citing Henley, supra, at 148, 2000-Ohio-493, 735 N.E.2d 433.
[5] 1st Dist. No. C-050149, 2005-Ohio-6516.
[6] Id. at ¶ 9.
[7] Id. at ¶ 7.
[8] 1st Dist. Nos. C-040881 and C-040882, 2005-Ohio-5965.
[9] Id. at ¶ 11, citing Cincinnati Municipal Code 1459-301 andFranchise Developers, Inc. v. Cincinnati (1987),30 Ohio St.3d 28, 505 N.E.2d 966.