Please note: This case has been removed from the accelerated calendar.
 OPINION. *Page 3 
{¶ 1} These consolidated appeals concern a proposed construction project on the hillside of Mount Adams. Plaintiffs-appellants, residents of Mount Adams ("the residents"), contest defendant-appellee Menke Development's planned construction of luxury condominiums on the hillside. The Cincinnati Zoning Board of Appeals ("ZBA") vacated and modified conditions that had been imposed upon Menke's project. The residents appeal from the trial court's judgment upholding the ZBA's decisions.
 {¶ 2} The residents have filed two separate appellate briefs containing a total of five assignments of error. Karen Kohrman has raised two assignments of error, arguing that the trial court failed to follow the instructions of this court on remand, and that the court erred in affirming the decisions of the ZBA. Larry and Evelyn McCord, together with Mitch and Jackie Meyers, have separately raised three assignments of error. The McCords and the Meyerses (collectively, the McCords) argue that the trial court abused its discretion in affirming the ZBA's decisions, that the court erred in denying their motion to dismiss, and that the court erred in assigning the case on remand to the same magistrate who had initially heard the case.
 {¶ 3} For the following reasons, we affirm the trial court's judgment.
 Factual Background {¶ 4} Menke purchased the property located at 360 Oregon Street for the purpose of building luxury condominiums. The property was zoned as R-6 multi-family high density and was also located in Environmental Quality-Hillside District No. 4. The local zoning code provides numerous requirements for an R-6 zone. The *Page 4 
code additionally contains various overlay guidelines to be considered for the construction of new buildings in Environmental Quality-Hillside Districts. It contains general overlay guidelines for all Hillside Districts ("EQ-HS"), as well guidelines specific to Mount Adams ("EQ-HS 4").
 {¶ 5} In January of 2003, Menke applied to the city for permission to construct the condominiums. Steven Briggs, the city's staff reviewing authority, reviewed Menke's proposal for the project. In his initial report, Briggs recommended denying Menke's application. Menke then revised his plans. In a supplemental report, Briggs recommended that the hearing examiner approve Menke's application, subject to certain conditions.
 {¶ 6} Robert Richardson, the hearing examiner, conducted two public hearings on the proposed project. The residents spoke out in opposition to Menke's project at these hearings. Richardson additionally conducted a site visit and reviewed Briggs' report. Richardson approved Menke's project, subject to Menke's compliance with various conditions. Four conditions are germane to these appeals. Condition six required a rear-yard setback of 20 feet, as opposed to the 11-foot setback that Menke had requested. Condition ten required that Menke reduce the overall height of the western section of the building and deck rail by three feet. Condition eleven required that the eastern section of the building be stepped to follow the grading and slope of Oregon Street. And condition twelve required Menke to modify the parking garage to accommodate the stepping described in condition eleven.
 {¶ 7} Both Menke and the residents appealed Richardson's decision to the ZBA. In his appeal, Menke asked the ZBA to vacate condition ten and to modify condition six to permit an 11-foot rear-yard setback. In their appeal, the residents asked the ZBA to reverse the decision of the hearing examiner or, at the very least, to modify numerous aspects of the examiner's decision. *Page 5 
 {¶ 8} In two almost identical decisions, the ZBA vacated conditions ten, eleven, and twelve in their entirety and modified condition six to permit an 11-foot rear-yard setback. The residents appealed the decisions to the common pleas court, which affirmed the ZBA. The residents then appealed to this court.
 {¶ 9} In the appeal, this court concluded that the ZBA had focused on whether Menke was entitled to area variances from the R-6 zoning requirements, and that the ZBA had failed to properly consider whether Menke was entitled to area variances from the EQ-HS guidelines.[1] We remanded the case to the trial court with instructions that the court weigh the evidence that was properly before the ZBA to determine whether Menke was entitled to variances from the EQ-HS requirements, as those requirements were reflected in the hearing examiner's conditions.[2]
 {¶ 10} On remand, the trial court again affirmed the ZBA's decisions. It concluded that no EQ-HS requirements were implicated by condition six, and that the condition was solely a code-variance issue. And after weighing the evidence in the record, the court further concluded that Menke was entitled to variances from the EQ-HS guidelines as reflected in conditions ten, eleven, and twelve. The court additionally overruled the residents' motion to dismiss the administrative appeal. The present appeals ensued.
 Entitlement to Variances {¶ 11} In Kohrman's first and second assignments of error, and in the first assignment of error raised by the McCords, the residents argue that the trial court erred in failing to follow this court's instructions on remand, and that the court abused its discretion in affirming the decisions of the ZBA. *Page 6 
 A. Standard of Review {¶ 12} This court's review of an administrative appeal is extremely deferential. We cannot independently weigh the evidence and are limited to reviewing questions of law and determining whether the trial court abused its discretion when weighing the evidence.[3] An abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court."[4]
 B. Conditions Ten, Eleven, and Twelve {¶ 13} The residents argue that the trial court abused its discretion in affirming the ZBA's decisions that vacated conditions ten, eleven, and twelve, and granted area variances from the applicable zoning requirements and EQ-HS guidelines.
 {¶ 14} A party requesting an area variance must demonstrate that the applicable zoning requirements present a practical difficulty.[5] This is a less stringent standard than that necessary to obtain a use variance.[6] A zoning requirement presents a practical difficulty when it unreasonably deprives a property owner of a permitted use of the property.[7] In Duncan v. Middlefield, the Ohio Supreme Court established a list of factors to be considered when determining whether a zoning requirement presents a practical difficulty: "(1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether *Page 7 
adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of government services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance."[8]
 {¶ 15} The trial court reviewed the evidence that was before the hearing examiner and conducted an analysis using the Duncan factors. Specifically, regarding the first Duncan factor, the court cited Menke's testimony before the hearing examiner that any reduction in the height of the building would have made the building unmarketable.
 {¶ 16} Regarding the second and third Duncan factors, the court concluded that the variances being sought were not substantial, and that they would not significantly affect the essential character of the neighborhood. To support these conclusions, the court noted that Menke had previously altered his design in response to concerns that had been raised by various neighbors and organizations. And the court cited Briggs' supplemental advisory report, which observed that the building's height would respect the views from neighboring properties, as the building had been altered in size and length and designed to be stepped with the topography. The supplemental advisory report further noted that Menke's proposed project should not have had a detrimental impact on the environment.
 {¶ 17} After considering the fourth Duncan factor, the court concluded that the condominium development would not adversely affect the delivery of governmental services. But the court concluded that the fifthDuncan factor weighed *Page 8 
against Menke because he had purchased the property with knowledge of the EQ-HS guidelines. When considering the sixth Duncan factor, the court relied on the same evidence that it had cited in its analysis of the first factor and determined that Menke's predicament could not feasibly be obviated without a variance from the EQ-HS guidelines. Lastly, with regards to the seventh Duncan factor, the court relied on the foregoing analysis to conclude that the spirit and intent behind the EQ-HS guidelines would be observed and substantial justice done by vacating conditions ten, eleven, and twelve.
 {¶ 18} The residents first argue that the trial court erred in labeling conditions ten, eleven, and twelve as "height issues" and in considering them together. The residents contend that each condition should have been analyzed separately. They are incorrect. Although the three conditions contained different requirements, each was imposed for the same purpose, which essentially was to respect neighboring views and to adjust the height and appearance of the building so that it better fit into the hillside. The court did discuss the conditions independently when necessary, and we cannot conclude that it erred in not considering each condition separately.
 {¶ 19} The residents further argue that the trial court's decision was not supported by substantial, reliable, and probative evidence. Again, the residents are incorrect. The court listed numerous EQ-HS and EQ-HS 4 guidelines that would have been affected if Menke were to be granted a variance. And it analyzed the Duncan factors in light of these guidelines, citing reliable evidence in support of the conclusions it reached. To be sure, it would certainly have been prudent for the court to have conducted a more detailed analysis on several of theDuncan factors. But "as long as `the court clearly had theDuncan factors in mind in reaching its decision,' it was not reversible error for the court to exclude an explicit discussion of each factor *Page 9 
in its judgment entry."[9] And it is clear from the court's judgment that it had the factors in mind when reaching its decision.
 {¶ 20} The record certainly contains evidence properly before the hearing examiner that militated against Menke and in favor of the residents. But we cannot independently weigh the evidence and make our own determination whether the variances should have been granted. Given our deferential standard of review, we cannot conclude that the trial court abused its discretion. The court clearly considered the evidence that was properly before the hearing examiner and did not act unreasonably or arbitrarily in concluding that the guidelines imposed a practical difficulty.
 C. Condition Six {¶ 21} The residents further argue that the trial court failed to follow this court's instructions on remand regarding condition six, which required a rear-yard setback of 20 feet. The court concluded that no EQ-HS guidelines were germane to condition six, and that the condition was a variance issue regulated only by the zoning code. The court accordingly affirmed the decisions of the ZBA modifying condition six to a rear-yard setback of 11 feet.
 {¶ 22} The residents argue that this court's instructions on remand required the trial court to apply the area-variance test from Duncan v.Middlefield to condition six. But we do not believe that our prior decision definitively required such action. This court's exact instructions were as follows: "On remand, the common pleas court must weigh the evidence that was properly before the ZBA to determine whether Menke met its burden under Duncan to demonstrate that it was entitled to *Page 10 
area variances from the requirements of the EQ-HS guidelines, as those requirements were reflected in conditions six, ten, eleven, and twelve of the hearing examiner's decision."[10]
 {¶ 23} The trial court reviewed the record as instructed by this court, and it determined that no EQ-HS guidelines were implicated by condition six. And following our review of the record, it appears that the court was correct in its interpretation of condition six. We have reviewed in detail both the EQ-HS and the EQ-HS 4 guidelines. No guideline regulates the rear-yard setback of a proposed building.
 {¶ 24} Consequently, we conclude that the trial court did not abuse its discretion in determining that condition six was solely a code variance issue and in affirming the ZBA's decisions modifying condition six to a rear-yard setback of 11 feet. Nor did the trial court err in affirming the decisions of the ZBA vacating conditions ten, eleven, and twelve.
 {¶ 25} Kohrman's first and second assignments of error, as well as the McCords' first assignment of error, are overruled.
 Motion to Dismiss {¶ 26} In their second assignment of error, the McCords argue that the trial court erred in denying their motion to dismiss the administrative appeal. To support their argument, they rely on language contained in a motion for reconsideration filed by Menke following this court's first decision.
 {¶ 27} In his motion for reconsideration, Menke stated that "this Court on remand has directed the trial court to review and consider evidence that, for obvious reasons, does not exist. This Court has asked the trial court to perform an impossible *Page 11 
task." The McCords argue that this statement was a judicial admission binding on Menke, and that, through this statement, Menke's counsel represented that the record did not contain evidence to support the ZBA's decisions. We disagree.
 {¶ 28} A judicial admission is "a distinct statement of fact which is material and competent and which is contained in a pleading."[11] But a statement that is not supported by the record cannot be binding as a judicial admission.[12]
 {¶ 29} Given our conclusion that the record contains sufficient evidence to support the ZBA's decisions vacating the conditions imposed by the hearing examiner, we cannot conclude that Menke's statement was a judicial admission. On its face, the statement is not supported by the record.
 {¶ 30} And with a reading of Menke's motion for reconsideration in its entirety, it is clear that this statement has been taken out of context. This court had remanded the case for the trial court to consider the evidence that was before the hearing examiner and to determine whether that evidence would support vacating the conditions that had been imposed. Through the statement in his motion for reconsideration, Menke was attempting to explain that because the conditions at issue were not imposed until after evidence had been presented to the hearing examiner, he could not have possibly presented evidence in direct response to the conditions.
 {¶ 31} Menke's motion for reconsideration stated that "[t]he Hearing Examiner purportedly and arbitrarily imposed each of these four conditions to bring Menke's project into compliance with the hillside guidelines. Again, these conditions first appeared in the Hearing Examiner's decision and thus no evidence could have been presented to the Hearing Examiner on the practical difficulties these conditions *Page 12 
imposed on Menke." This assertion clarified Menke's statement and made clear that he had not admitted defeat.
 {¶ 32} The language cited by the McCords was not a judicial admission, and the trial court did not err in denying the motion to dismiss. This assignment of error is overruled.
 Local Rule 7 {¶ 33} In their third assignment of error, the McCords argue that the trial court erred in assigning this case on remand to the same magistrate that had reviewed the case on the residents' first appeal. They direct this court to Loc.R. 7(F) of the Hamilton County Common Pleas Court and argue that it should apply to magistrates as well as to judges.
 {¶ 34} Loc.R. 7(F) provides that "[w]hen a new trial is ordered, for any reason, either by the judge who originally tried the case or by a reviewing court, the case, for purposes of such new trial, shall be reassigned by lot in accordance with the system authorized by paragraph B hereof." Paragraph B provides for the assignment of cases to judges by lot.
 {¶ 35} On its face, this rule only applies to judges. We decline to extend its application to magistrates as well. Moreover, we note that no new trial was ordered in this case. This court remanded the case for the trial court to properly weigh the evidence, but we did not order a new trial. And we have previously concluded that Loc.R. 7(F) is inapplicable when a case has been returned to the trial court but no new trial has been ordered.[13]
 {¶ 36} This assignment of error is overruled. *Page 13 
 Conclusion {¶ 37} The trial court did not abuse it discretion in affirming the decisions of the ZBA modifying the rear-yard setback of Menke's proposed building and granting Menke variances from three conditions imposed by the hearing examiner. Nor did the court err in denying the residents' motion to dismiss. And because no new trial had been ordered, and because Loc.R. 7(F) does not apply to magistrates, the court did not err in assigning the case to the same magistrate on remand.
 {¶ 38} Having overruled the residents' assignments of error, we accordingly affirm the judgment of the trial court.
Judgment affirmed.
PAINTER, P.J., and WINKLER, J., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] See Kohrman v. Cincinnati Zoning Bd. of Appeals,165 Ohio App.3d 401, 2005-Ohio-5965, 846 N.E.2d 890.
[2] Id. at ¶ 23.
[3] Id. at ¶ 7.
[4] Pembaur v. Leis (1982), 1 Ohio St.3d 89, 91, 437 N.E.2d 1199.
[5] Duncan v. Middlefield (1986), 23 Ohio St.3d 83, 85,491 N.E.2d 692.
[6] Id.
[7] Id. at 86.
[8] Id.
[9] Roberts v. Lordstown (July 10, 1998), 11th Dist. No. 97-T-0149, quoting Cottrell v. Russel Twp. Bd. of Zoning Appeals (Mar. 26, 1993), 11th Dist. No. 92-G-1698.
[10] Kohrman v. Cincinnati Zoning Bd. of Appeals, 165 Ohio App.3d 401, at ¶ 23.
[11] Beneficial Ohio, Inc. v. Primero, LLC, 166 Ohio App.3d 462,2006-Ohio-1566, 851 N.E.2d 510, ¶ 12, citing Faxon Hills Constr. Co. v.United Bhd. of Carpenters Joiners (1958), 168 Ohio St. 8, 10,151 N.E.2d 12.
[12] Id. at ¶ 15.
[13] See In re: Chassagne (Nov. 19, 1986), 1st Dist. Nos. C-850615 and C-850735. *Page 1